# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

TERRY TURNER,              )

                   )

       Plaintiff,      )    No. 4:12-CV-561 JAR

                   )

       v.          )

                   )

SIDNEY MULL, et al.      )

                   )

       Defendants.   )

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' Motion for Summary Judgment (ECF No. 102) and Defendant Chandler's Motion for Summary Judgment (ECF No. 104). These motions are fully briefed and ready for disposition.

## BACKGROUND

At all times relevant, Plaintiff Terry M. Turner ("Plaintiff") was an inmate confined at the Eastern Reception Diagnostic Correctional Center ("ERDCC"). (Defendant's [sic] Statement of Uncontroverted Material Facts ("DSUF"), ECF No. 103-1, ¶1). Defendant Robert Thebeau was a correctional officer at ERDCC. (DSUF, ¶2). Defendant Pete Koenig was a transportation officer at ERDCC. (DSUF, ¶3). Defendant Sidney Mull was a transportation supervisor at ERDCC. (DSUF, ¶4). Defendant Terry Russell was the warden at ERDCC. (DSUF, ¶5).[1] Angela Chandler employed by Corizon, Inc. as the Health Services Administrator at ERDCC. (Defendant Chandler's Statement of Uncontroverted Material Facts in Support of Defendant's Motion for Summary Judgment ("Chandler SUF"), ECF No. 105-1, ¶3).

---

[1] Thebeau, Koenig, Mull and Russell are collectively referred to as the "Prison Defendants".

Plaintiff's claims against Defendants relate to his transportation in a non-handicapped-accessible van on March 22 and October 20, 2011, alleged threats made against him on March 22, 2011, and alleged threats and destruction of property in his cell during his confinement at ERDCC. Plaintiff suffers from a demyelinating neurological disorder of unknown etiology. (Chandler SUF, ¶5). Neurological disorders, such as Multiple Sclerosis (MS), are conditions in which the body's immune system attacks the myelin sheath surrounding the nerves in the brain and spinal cord, which can result in slowed or blocked nerve signals and symptoms including difficulty with muscle coordination and other bodily functions. (Chandler SUF at n.1)(citing http://www.mayoclinic.org/multiple-sclerosis/). During the relevant time period, Plaintiff was able to ambulate with the use of leg braces and crutches, and was able to stand and sit with his leg braces and crutches. (Chandler SUF, ¶8). Plaintiff claims, however, that he was unable to lift his own legs, meaning that he could not walk up steps, and he used a catheter bag at all times. (ECF No. 109 at 3)(citing Terry Turner Dep. Tr. 57:8-15, 73:24-74:1). Throughout 2011, no physician had ordered a wheelchair for Plaintiff or issued a wheelchair for Plaintiff. (Chandler SUF, ¶9).

On March 22, 2011, Plaintiff was taken by Koenig and Thebeau on a medical outcount to Capitol Regional Medical Center ("CRMC") in Jefferson City, Missouri. (Chandler SUF, ¶11; DSUF, ¶13; Second Amended Complaint, ¶17). Plaintiff alleges that he required and was not provided with handicapped-accessible transportation on March 22, 2011. (Second Amended Complaint, ¶¶13, 16-29). Plaintiff alleges that he was forced to be transported in a non-handicapped-accessible van that contained urine and vomit. (Id.).

Plaintiff alleges that during the transport from CRMC back to ERDCC, Thebeau drove the van off the main road leading back to ERDCC. (Second Amended Complaint, ¶26). Plaintiff

alleges that when the van was one to two miles into the woods and near a bridge, Thebeau stopped the van, turned off the engine and parked for approximately five minutes. (Id., ¶27). Plaintiff alleges that, while the van was stopped, Thebeau told Plaintiff that they could drown him and claim that he had tried to escape, and that Thebeau and Koenig then laughed. (Id., ¶28).

On May 19, 2011, Plaintiff filed an Inmate Resolution Request (IRR) regarding his allegations concerning the March 22, 2011 outcount. (DSUF, ¶14; Chandler SUF, ¶17). On June 8, 2011, he filed a second IRR regarding the March 22, 2011 outcount. (Id.). Plaintiff asserts that after he filed these formal complaints, he was retaliated against. (Second Amended Complaint, ¶36). Specifically, Plaintiff contends that, in the presence of Thebeau, his cell was searched and ransacked in retaliation for his complaints. (Id., ¶36). In addition, Plaintiff alleges that Thebeau repeatedly came to 3-House, called Plaintiff names and directed expletives towards him in retaliation for his complaints. (Id., ¶37).

Plaintiff alleges that he sent Warden Russell multiple letters regarding Thebeau's alleged threats and actions. (Second Amended Complaint, ¶32). Plaintiff alleges that on August 19, 2011, he was interviewed by Missouri Department of Correction ("MDOC") investigator Matthew Pierce regarding Thebeau's actions and threatening behavior. (Second Amended Complaint, ¶34). Plaintiff alleges that Pierce directed that Plaintiff be removed from the housing unit where he was incarcerated, 3-House. (Id., ¶35).

On September 5, 2011, Defendant Chandler emailed her request to Mull that Plaintiff be transported on medical outcounts in a "wheelchair, handicapped-accessible van" by Missouri Department of Corrections ("MDOC") transportation staff. (Chandler SUF, ¶26; DSUF, ¶15).

On October 22, 2011, Plaintiff was transferred to Western Missouri Correctional Center ("WMCC"). (Amended Complaint, ¶39). Koenig was one of the transportation officers who

drove Plaintiff to WMCC. (DSUF, ¶17). A Missouri Department of Corrections bus was used for the first leg of Plaintiff's transportation from Bonne Terre to Jefferson City, Missouri on October 22, 2011. The second part of Plaintiff's journey on October 22, 2011, from Jefferson City, Missouri to Cameron, Missouri, was in a handicapped-accessible van. (Chandler SUF, ¶35). Plaintiff alleges that he required but was not provided with handicapped-accessible transportation on October 20, 2011. (Chandler SUF, ¶37).

On March 4, 2013, Plaintiff filed a Second Amended Complaint alleging claims under 42 U.S.C. §1983, alleging violations of his Eighth and Fourteenth Amendment Rights, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131, and Section 504 of the Rehabilitation Act. In Count I, Plaintiff alleges that all Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights through their conduct during Plaintiff's transportation on March 22 and October 20, 2011. In Count II, Plaintiff alleges a §1983 claim against Thebeau because he retaliated against Plaintiff for filing an IRR. In Count III, Plaintiff alleges that all Defendants violated Plaintiff's rights under the ADA and Rehabilitation Act by failing to provide Plaintiff with a handicapped-accessible vehicle during his transportation on March 22 and October 20, 2011. Finally, in Count IV, Plaintiff alleges a retaliation claim against Thebeau under the ADA and Rehabilitation Act.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law

determines which facts are critical and which are irrelevant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. <u>Id.</u> Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id.</u>

A moving party always bears the burden of informing the Court of the basis of its motion. <u>Celotex Corp.</u>, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. <u>Anderson</u>, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. <u>Celotex Corp.</u>, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" <u>Torgerson</u>, 643 F.3d at 1042 (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000)).

## **DISCUSSION**

### A.  Count I

In Count I, Plaintiff alleges a §1983 claim for violating his Eighth and Fourteenth Amendment rights against all Defendants in their individual and official capacities during Plaintiff's March 22 and October 11, 2011 transportations.

1.  Official Capacity Claims Against All Defendants

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993). "To establish liability in an official-capacity suit under section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom, see Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (allegedly unconstitutional city policy of forcing women to take leave of absences for pregnancy earlier than necessary), or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner." Nix v. Norman, 879 F.2d 429, 433 (8th Cir. 1989)(citing Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); Williams v. Butler, 863 F.2d 1398 (8th Cir.1988); Clay v. Conlee, 815 F.2d 1164 (8th Cir.1987)).

Defendants contend that Plaintiff has not asserted a policy or custom that violates Plaintiff's constitutional rights. Defendants contend that Plaintiff has not alleged any facts "which support the existence of an ERDCC or MDOC policy or custom of transporting handicapped offenders in vehicles that were not 'handicapped-accessible' in violation of their medical needs." (ECF No. 103 at 5). If no policy is alleged, Defendants maintain that they could not have been aware of and deliberately indifferent to such a policy. (ECF No. 103 at 6). As a result, Defendants assert that they should be granted summary judgment on Count I as to Defendants in their official capacities. (ECF No. 103 at 6).

In response, Plaintiff claims that he has provided admissible evidence that shows that an ERDCC policy caused the violation of his constitutional rights. Plaintiff alleges that MDOC

employees "knew or should have known that Mr. Turner needed to be transported in a handicapped-accessible van." (Second Amended Complaint, ¶15). Plaintiff asserts that he has presented evidence that inmates at ERDCC are not permitted to be transported in a wheelchair-accessible or otherwise handicapped-accessible van unless they appear at the pickup area in a wheelchair, and that the ERDCC officers have no discretion with respect to this policy. (ECF No. 109 at 6). Plaintiff contends that this policy forces ERDCC employees to ignore prisoners' serious disabilities that do not involve wheelchairs when deciding how those prisoners should be transported, even though guards can request wheelchairs for such circumstances. (ECF No. 109 at 6-7). Plaintiff claims that this was this non-discretionary policy that caused his constitutional deprivation in this case. (ECF No. 109 at 7).

The Court holds that Plaintiff has not shown that there was an official policy that violated his constitutional rights. As stated, Plaintiff claims that he required but was not provided handicapped-accessible transportation. The undisputed facts, however, do not support a finding that Plaintiff required handicapped-accessible transportation, or that such transportation would have benefitted Plaintiff. Plaintiff was able to ambulate with the use of leg braces and crutches. (Chandler SUF, ¶¶7-8). Moreover, no physician had ordered a wheelchair for Plaintiff or issued a wheelchair for Plaintiff. (Chandler SUF, ¶9). Plaintiff told Chandler that the minivan he was being transported in by the MDOC was uncomfortable because his leg braces "hit the cage" in the vehicle and because it was difficult for him to step up into the van, despite being provided a stepstool by the MDOC. (Chandler SUF, ¶23). The minivans at ERDCC are shorter than the wheelchair-accessible vans and sit closer to the ground, have dual-sliding doors, and the seats lean forward. (Chandler SUF, ¶25). However, the only "handicapped accessible" vehicles available at ERDCC during the relevant time period relevant were wheelchair-accessible vans

equipped with a lift. (Chandler SUF, ¶24). The act of standing on the handicapped-accessible van's lift was considered dangerous due to the possibility of a fall, so that only a person in a wheelchair could use the lift. (Chandler SUF, ¶30).[2] Further, according to an August 18, 2011 letter from Vicki Myers, MDOC Director of the Division of Human Services, a physician had not deemed a handicapped vehicle medically necessary for Plaintiff because he was able to sit in a regular vehicle. (ECF No. 103-14).

Thus, Plaintiff has not shown that ERDCC's official policy violated his constitutional rights. Plaintiff has not demonstrated that the failure to transport him in a wheelchair-accessible van did not consider his serious medical needs. Rather, the evidence before the Court indicates that the policy requiring inmates to be in wheelchairs in order to utilize the wheelchair-accessible vans was for their own safety. ERDCC policy provided that Plaintiff had the option of a wheelchair-accessible van only if he arrived for transportation in a wheelchair. Given that Plaintiff did not arrive for transportation in a wheelchair, ERDCC policy provided that Plaintiff could not be transported in a wheelchair-accessible. ERDCC staff was not required to compromise its own policy and the safety of its inmates simply because Plaintiff believed that a wheelchair accessible van was more comfortable. The Court finds that the government policy that required Plaintiff to be transported in a non-handicapped-accessible van did not violate his constitutional rights. Accordingly, the Court finds grants summary judgment as to the official capacity claims in Count I.

      2. Individual Capacity Claims for Deliberate Indifference to Serious Medical Need

---

[2] Plaintiff does not deny that standing on the wheelchair lift is dangerous. Plaintiff only asserts that he was lifted on a wheelchair lift on occasions prior to March 22, 2011. (ECF No. 111, ¶30).

"A prison official is deliberately indifferent if she 'knows of and disregards' a serious medical need or a substantial risk to an inmate's health or safety." Nelson v. Corr. Med. Servs., 583 F.3d 522, 528-29 (8th Cir. 2009)(citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). A claim of deliberate indifference has both an objective and a subjective component. Nelson v. Corr. Med. Servs., 583 F.3d at 529; Farmer, 511 U.S. at 838–39. Thus, the relevant questions here are: (1) whether Plaintiff had a serious medical need or whether a substantial risk to her health or safety existed, and (2) whether Defendants had knowledge of such serious medical need or substantial risk to the plaintiff's health or safety but nevertheless disregarded it. Nelson v. Corr. Med. Servs., 583 F.3d at 529; Farmer, 511 U.S. at 842. The second part of the test requires plaintiff to prove that the prison official was more than negligent. Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006).

a. Individual Capacity Claim against Warden Terry Russell

"[P]rison supervisors … cannot be held liable under § 1983 on a theory of respondeat superior." Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010); Luckert v. Dodge Cnty., 684 F.3d 808, 817 (8th Cir. 2012). "Supervisors can, however, 'incur liability ... for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices.'" Id. (quoting Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir.1993)).

Prison Defendants contend that Russell cannot be held liable because he was not personally involved in any constitutional violation or that he was deliberately indifferent to the fact that constitutional violations were occurring. Prison Defendants note that Plaintiff utilized the IRR procedure at ERDCC, and that the Warden's office responded to Plaintiff's IRR. (ECF No. 103, at 6-7). Prison Defendants also assert that Plaintiff has not provided any evidence of a

policy or custom whereby Russell was deliberately indifferent to Plaintiff's medical or transportation needs.

In response, Plaintiff contends that Russell was deliberately indifferent to his serious medical needs because he failed to act in response to Plaintiff's three letters between March 22 and October 20, 2011. (ECF No. 109 at 10-11). In those letters, Plaintiff notified Russell that he had not been transported in handicapped accessible vehicles and that threats were made to his life on March 22, 2011. (Second Amended Complaint, ¶32). Plaintiff contends that the Court can reasonably infer that Russell was on notice of the ERDCC policy that resulted in the violations of his rights on March 22, 2011, and that Russell failed to prevent the situation from recurring on October 20, 2011. (ECF No. 109 at 10). Thus, Plaintiff asserts it was Russell's "corrective inaction" as a supervisor that allowed his continued deprivation of his constitutional rights on October 20, 2011. (ECF No. 109 at 10-11).

The Court grants summary judgment with respect to defendant Russell. As discussed herein, the Court does not believe that Plaintiff's constitutional rights were violated either on March 22, 2011 or on October 20, 2011. The Court holds that the Prison Defendants did not violate Plaintiff's constitutional rights when Plaintiff was transported in a non-handicapped accessible van or when Thebeau allegedly made threatening statements to Plaintiff on March 22, 2011. Thus, Russell cannot be held liable for failing to take a corrective action based upon Plaintiff's letters to him when there was no underlying constitutional violation. Moreover, the record reflects that Russell responded to Plaintiff's IRR in an effort to resolve this issue. Therefore, the Court grants Defendants' Motion for Summary Judgment on Count I with respect to Russell.

      b.  Other Prison Defendants and their Awareness of a Serious Medical Need

In Count I, Plaintiff alleges deliberate indifference to his serious medical needs. Defendants characterize Plaintiff's claim "he had a medical need to be transported in a wheelchair-accessible van and Defendants failed to provide such transportation." (ECF No. 103 at 7-8). Defendants claim that they "were neither aware of nor disregarded any such need." (ECF No. 103 at 8). Plaintiff, however, claims that Defendants misconstrue his claim. Plaintiff states that he suffers from an "obvious handicapped condition" which undermines Defendants' claim that they cannot be held liable under §1983 because no doctor ordered that Plaintiff needed to be transported in a handicapped-accessible van, or because they did not know that Plaintiff needed to be transported in a handicapped-accessible van. (ECF No. 109 at 4). See Santiago v. Blair, 707 F.3d 984, 990 (8th Cir. 2013)(citing Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir.1995)("A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.")).

i.    Thebeau and Koenig

Plaintiff alleges that Thebeau and Koenig were deliberately indifferent to his seriously medical needs when they transported him on March 22, 2011 for his medical outcount.[3] Defendants contend that neither Thebeau nor Koenig was aware of a medical need for Plaintiff to be transported in a wheelchair-accessible vehicle. (ECF No. 103 at 9). Prison Defendants note that Plaintiff was ambulating by using forearm crutches. Further, Prison Defendants state that Thebeau and Koenig had no discretion regarding which vehicles were assigned and used for transporting inmates, and that ERDCC's policy was that wheelchair-accessible vans were only

---

[3] Koenig admits to driving Plaintiff to his medical outcount, but Thebeau denies transporting Plaintiff. (ECF No. 103 at 8). For purposes of summary judgment, however, Prison Defendants assume that Thebeau transported Plaintiff.

for inmates in wheelchairs. (ECF No. 103 at 9). Finally, Prison Defendants contend that the fact that Plaintiff used crutches and leg braces "does not reflect a serious medical need to be transported in a specific way." (ECF No. 103 at 10 (citing <u>Rothman v. Lombardi</u>, 4:11-CV-639 CEJ, 2013 WL 4855301, at *3 (E.D. Mo. Sept. 11, 2013)("the fact that plaintiff was an older man who ambulated with a cane does not reflect an objectively serious medical need")).

The Court holds that Plaintiff has not demonstrated a §1983 violation by Koenig and Thebeau. Plaintiff has not demonstrated that the failure to transport him in a wheelchair-accessible van did not consider his serious medical needs. Rather, as indicated previously, Koenig and Thebeau transported Plaintiff in a regular van pursuant to ERDCC policy because he did not arrive for transportation in a wheelchair. Because the record indicates that the ERDCC officers did not allow Plaintiff, who was not in a wheelchair, to be transported in a wheelchair-accessible van for Plaintiff's own safety, the Court finds no constitutional violation.

### ii. Defendant Mull

Prison Defendants contend that Mull was not aware of a serious medical need to transport Plaintiff in a wheelchair-accessible vehicle and, therefore, did not violate Plaintiff's constitutional rights during the March 22, 2011 transport. (ECF No. 103 at 10). Prior to Chandler's September 5, 2011 email, Prison Defendants assert that Mull never received any communication from medical staff that Plaintiff needed to be transported in a wheelchair-accessible vehicle. (<u>Id.</u>). Prison Defendants further contend that Plaintiff did not tell Mull that he needed to be transported in a wheelchair-accessible vehicle. (<u>Id.</u>).

In response, Plaintiff states that Mull was deliberately indifferent to his serious medical needs. Plaintiff notes that on September 5, 2011, Defendant Chandler sent an email to Mull stating that Plaintiff should be transported in a wheelchair-accessible van. (ECF No. 109 at 11).

Mull was present on October 20, 2011 when Plaintiff arrived at the pickup area in a wheelchair but, nevertheless, was transported in a non-wheelchair accessible van. (Id.). Thus, Plaintiff asserts that Mull knew of Plaintiff's serious medical need when Mull failed to transport him in a wheelchair-accessible van on October 20, 2011. (Id.). In addition, Plaintiff contends that there is no basis in the law that an actor cannot be deliberately indifferent to a serious medical need when there is no doctor's note; Plaintiff contends it is enough that the serious medical need is obvious. (Id.).

The Court holds that defendant Mull was not deliberately indifferent to Plaintiff's serious medical needs on March 22, 2011 or October 20, 2011. With respect to the March 22, 2011 transport, the Court has previously held that Plaintiff was not transported in a wheelchair accessible van because it was contrary to ERDCC policy and was for Plaintiff's own safety. With respect to the October 20, 2011 transport, the record reflects that Plaintiff was offered the opportunity to wait for a wheelchair accessible van, but he chose not to wait and instead took the bus. (ECF Nos. 103 at 11, 103-5 at 29-32; Chandler SUF, ¶30). Plaintiff cannot state a claim for deliberate indifference against Mull when he chose to take the non-wheelchair accessible van on October 20, 2011.

### iii.  Defendant Chandler

Chandler claims that she did not know prior to September 2011 that Plaintiff needed to be transported in a wheelchair-accessible van, but once she found out, she asked Mull to transport him accordingly. Chandler also claims that she had no authority over transportation matters.

In response, Plaintiff notes that he has testified that he had at least two conversations with Chandler prior to March 22, 2011 regarding his need to be transported in a wheelchair-accessible van and that Chandler contacted Mull, the transportation supervisor, to pass along these

directives. (ECF No. 109 at 12). Thus, Plaintiff claims that the Court can infer that Chandler knew that Plaintiff required a wheelchair-accessible van prior to March 22, 2011 and that, instead of ensuring that Plaintiff had this medically-needed transportation, Chandler was deliberately indifferent until she received Plaintiff's grievance in September 2011.

The Court finds that Chandler was not deliberately indifferent to Plaintiff's serious medical needs. The record before the Court indicates that Plaintiff did not require or qualify for a handicapped-accessible van when he appeared for transport in leg braces. Further, with respect to October 20, 2011 transport, Plaintiff chose to ride in the bus, rather than wait for the wheelchair-accessible van. (ECF Nos. 103 at 11, 103-5 at 29-32). Based upon the foregoing, the Court finds that Chandler did not violate Plaintiff's constitutional rights.

### 3. Unsanitary Conditions

Plaintiff alleges that the transportation on March 22, 2011 violated his constitutional rights because he was forced to crawl unassisted into the van through urine, vomit and "other bodily secretions." (Second Amended Complaint, ¶¶21-24). "[I]nmates are entitled to reasonably adequate sanitation, … particularly over a lengthy course of time." Owens v. Scott Cnty. Jail, 328 F.3d 1026, 1027 (8th Cir. 2003)(citing Howard v. Adkison, 887 F.2d 134, 137 (8th Cir.1989). In reviewing whether the conditions of confinement violate the Eighth Amendment, the Eighth Circuit "focus[es] on the length of his exposure to unsanitary conditions and how unsanitary the conditions were[.]" Owens, 328 F.3d at 1027.

Here, it is undisputed that the ride from ERDCC to Capital Regional Medical Center is approximately 3 hours each way. The Court finds that Plaintiff's alleged exposure to urine and vomit for six hours does not constitute an Eighth Amendment violation. See Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996)(finding no Eighth Amendment or due process violation where

pretrial detainee was subjected to overflowed toilet in his cell for four days); White v. Nix, 7 F.3d 120, 121 (8th Cir.1993)(no constitutional violation where pretrial detainee was confined in unsanitary cell for eleven days; "considering the relative brevity of White's stay in cell I–1, no Eighth Amendment violation occurred"); Goldman v. Forbus, 17 Fed. Appx 487, 488, 2001 WL 838997 (8th Cir. 2001) (unpublished per curiam) (no constitutional violation where pretrial detainee slept six nights on floor next to toilet).  Based upon Plaintiff's limited time of exposure to the fecal matter and vomit, the Court finds no constitutional violation during the March 20, 2011 transport.

### 4.   Threats

Plaintiff alleges that during the transport from CRMC to ERDCC, Thebeau drove the van off of the main road leading back to ERDCC.  Plaintiff alleges that Thebeau turned off the engine for about five minutes and threatened to drown Plaintiff and claim that he had escaped. (Second Amended Complaint, ¶¶26-28).

Prison Defendants contend that Plaintiff's allegation of a threat cannot constitute a constitutional violation.  First, Prison Defendants state that mere verbal threats made by a state actor do not constitute a §1983 violation.  (ECF No. 103 at 13)(citing Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir. 1992)).  Further, Prison Defendants contend that there is "no evidence of an intention to carry out the alleged threat nor was it a part of a pattern of verbal abuse or threats."  (ECF No. 103 at 14).

The Court finds that Thebeau's alleged one sentence threat does not rise to the level of a constitutional violation.  Eighth Circuit law is clear that "[g]enerally, mere verbal threats made by a state-actor do not constitute a § 1983 claim."  Hopson, 961 F.2d at 1378 (citing IU, 780 F.2d 1334, 1338 (8th Cir.1985)).  "In determining whether the constitutional line has been crossed, a

court must look to such factors as "the amount of force that was used in relationship to the need presented, the extent of injury inflicted, and the motives of the state officer." Hopson, 961 F.2d at 1378 (citation omitted). "If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983." Id. Plaintiff alleges Thebeau made a one sentence utterance, but that no action was taken in furtherance of the alleged threat. The Court finds that, even if highly improper, assuming that all facts in favor of Plaintiff, the alleged threats made against Plaintiff did not rise to the level of a constitutional violation. See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir.1997) (verbal harassment and abuse insufficient to state claim under §1983); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.1987)(threats insufficient to state claim under §1983). Thebeau's "alleged conduct failed to rise to the level of a 'brutal' and 'wanton act of cruelty.'" Hopson, 961 F.2d at 1379 (citing Burton v. Livingston, 791 F.2d 97, 100 (8th Cir. 1986)).

## B. Count II

It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right. Johnson v. Eggersdorf, 8 F. App'x 140, 144 (2d Cir. 2001)(citing Graham v. R.J. Henderson, 89 F.3d 75 (2d Cir.1996)("This court has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under §1983."). A prisoner retaliation claim under §1983 must be factual, and mere conclusory allegations of unconstitutional retaliation will not

suffice. <u>Cole v. Stepp</u>, 09-22492-CIV, 2010 WL 5647117, at *2 (S.D. Fla. Nov. 1, 2010)(citing <u>Adams v. James</u>, 797 F.Supp. 940, 948 (M.D.Fla.1992)).

In Count II, Plaintiff alleges a §1983 retaliation claim against defendant Thebeau. Plaintiff alleges that Thebeau was present when Plaintiff's cell was searched and some of Plaintiff's property was damaged in retaliation for Plaintiff filing a complaint regarding the September 22, 2011 outcount. (Second Amended Complaint, ¶36). Plaintiff also alleges that Thebeau repeatedly came to 3-House to call Turner names and direct expletives towards him. (<u>Id.</u>, ¶37). In Plaintiff's Memorandum in Opposition, Plaintiff clarifies that his claim against Thebeau is only in his individual capacity. (ECF No. 109 at 9, n.1).

Prison Defendants contend that Thebeau was not personally involved in the search of Plaintiff's cell or the destruction of his property. Although Thebeau was allegedly standing at the doorway and ordered the destruction of the property, Prison Defendants claim that Thebeau's lack of personal involvement in the search requires summary judgment on the §1983 retaliation claim. (ECF No. 103 at 16-17). Likewise, Prison Defendants contend that the single search of Plaintiff's cell cannot rise to the level of a constitutional violation. (ECF No. 103 at 17). Finally, Prison Defendants assert that negligent or intentional deprivation of an inmate's property does not constitute a Fourteenth Amendment violation where an adequate postdeprivation remedy for destruction of property is available. (ECF No. 103 at 17-18). Prison Defendants state that Plaintiff has not alleged that he availed himself of ERDCC's grievance procedure, nor did he pursue state law tort remedies. (<u>Id.</u>). Accordingly, Prison Defendants contend that they must be granted summary judgment on Count II.

In response, Plaintiff contends that Prison Defendants' citation to single cell search cases is inapposite because the officers not only searched but also destroyed Plaintiff's property. (ECF

No. 109 at 9). Further, Plaintiff contends that Thebeau was personally involved in that he directed and oversaw the destruction of his property, and that the ransacking of his cell was retaliatory in nature. (ECF No. 109 at 10).

The Court finds that Plaintiff's claim for retaliation under §1983 fails. Plaintiff has not demonstrated that Thebeau directed and oversaw the destruction of his property. There is no evidence that Thebeau was acting as a supervisor or was in any way in charge of the search. At most, Plaintiff has provided evidence that Thebeau was present, but not personally involved in such a search. Moreover, Plaintiff has not provided any evidence, other than his own speculation, to support his allegation that the search of and destruction of items in cell was in retaliation for filing any IRRs. Thus, Plaintiff's conclusory allegations that Thebeau ordered the cell search and the search was prompted by Thebeau's retaliatory intent are insufficient to support his retaliation claim under §1983, and the Court grants Defendants' Motion for Summary Judgment. See Padilla v. Almeda Cnty. Bd. of Supervisors, C 97-3683 FMS(PR), 1998 WL 196477 (N.D. Cal. Apr. 15, 1998) aff'd sub nom. Padilla v. Alameda Cnty. Bd. of Supervisors, 172 F.3d 57 (9th Cir. 1999)("plaintiff's conclusory allegation that all alleged incidents of mistreatment or harassment were in retaliation for his filing grievances accordingly was not sufficient to state a claim for unconstitutional retaliation").

### C. Count III

In Count III of Plaintiff's Second Amended Complaint, Plaintiff alleges that all of the Defendants committed violations of Title II of the ADA and section 504 of the Rehabilitation Act. The parties agree that the claims against defendants are in their official capacities only. (ECF No. 103 at 18-19; ECF No. 109 at 12-13).

### 1. ADA

a. Prison Defendants

Defendants contend that the ADA Title II claims against Defendants in their official capacities are barred by Eleventh Amendment immunity. (ECF No. 103 at 19-20). Plaintiff, however, asserts that Eleventh Amendment Immunity does not apply to ADA Title II claims where (as here) Plaintiff is seeking prospective injunctive relief. (ECF No. 109 at 13) (citing Randolph v. Rodgers, 253 F.3d 342, 346-48 (8th Cir. 2001)).[4] The Court grants summary judgment in favor of Defendants in their official capacities on the ADA Title II claim because Plaintiff no longer resides at ERDCC and cannot obtain injunctive relief. (ECF No. 116 at 11). Because Plaintiff was transferred to NECC and the Defendants have no power or authority over NECC, the Court has no basis for affording prospective injunctive relief. Therefore, the Court cannot grant any relief that is not barred by Eleventh Amendment immunity and grants summary judgment on Plaintiff's ADA claim in Count III.

b. Defendant Chandler

Title II of the ADA applies to "public entities." 42 U.S.C. § 12132. Under 42 U.S.C. § 12131(1), "The term 'public entity' means ... any State or local government [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government." Plaintiff cannot assert a claim against Chandler (or Corizon)[5] under Title II of the ADA because she and her employer are not "public entities." The term "public entities" "does not include individuals." Bounds v. Corizon, Inc., 4:13CV297 CDP, 2013 WL 943784, at *3

---

[4] See Randolph v. Rodgers, 253 F.3d 342, 348 (8th Cir. 2001)("We believe the District Court did not err by holding that Randolph may proceed under *Ex parte Young* to seek prospective injunctive relief[.]").

[5] Litigation against an individual in her official capacity is "treated as a suit against the employer itself." Jones v. City of St. Louis, 4:12CV831 JCH, 2012 WL 5351744, at *2 (E.D. Mo. Oct. 30, 2012)

(E.D. Mo. Mar. 11, 2013)(citing <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 n. 8 (8th Cir.1999) (en banc)). "A private contractor does not become a 'public entity' under Title II merely by contracting with a governmental entity to provide governmental services." <u>Bounds v. Corizon, Inc.</u>, 2013 WL 943784, at *3 (citing <u>Green v. City of New York</u>, 465 F.3d 65, 79 (2nd Cir.2006)). As a result, Title II of the ADA, which applies to prisoners, does not impose liability on Chandler, and Plaintiff's ADA claim fails as a matter of law.

### 2. Rehabilitation Act

The Rehabilitation Act prohibits discrimination "under any program or activity receiving [F]ederal financial assistance" against any otherwise qualified individual with a disability, solely because of his disability. <u>See</u> 29 U.S.C. § 794(a). The Rehabilitation Act provides for private causes of action. <u>See</u> <u>Rodgers v. Magnet Cove Pub. Schs.</u>, 34 F.3d 642, 643-45 (8th Cir.1994) (Rehabilitation Act provides for damages claim for disability discrimination).

### a. Prison Defendants

Prison Defendants contend that Plaintiff has not alleged or provided evidence of a MDOC or ERDCC policy or custom of transporting handicapped offenders in an inappropriate manner. (ECF No. 103 at 21). In addition, Prison Defendants contend that Plaintiff "has not alleged with any specificity a benefit that he was denied." (<u>Id.</u>). Prison Defendants note that Plaintiff was transported to his doctor's appointment and transferred out of ERDCC and received assistance from MDOC officers utilizing the transportation. (<u>Id.</u>).

In response, Plaintiff argues again that the obviousness of his serious medical condition and the evidence that he notified Chandler of his need for handicapped-accessible transport as early as 2007 preclude the entry of summary judgment. (ECF No. 109 at 13). Further, Plaintiff has come forward with evidence that he was transported in a handicapped-accessible van on

previous occasions and that he asked to be transported in a handicapped-accessible van on March 22, 2011. (Id.; ECF No. 109-1 at 14). Finally, Plaintiff contends that he was denied the benefit of transportation that accommodates his disability. (ECF No. 109 at 14).

The Court finds as a matter of law that the Prison Defendants did not discriminate against Plaintiff based upon his disability. First, the Court finds that Plaintiff has not demonstrated that a wheelchair-accessible van was required to accommodate his disability. The Rehabilitation Act does not require ERDCC to utilize an unsafe accommodation, even if Plaintiff believes that it is more comfortable. See Bombrys v. City of Toledo, 849 F. Supp. 1210, 1216 (N.D. Ohio 1993)(citing Southeastern Community College v. Davis, 442 U.S. 397, 410 (1979)) ("Accommodation is unreasonable if it requires modification of the essential nature of the program, or if accommodation would place an undue burden, such as cost, upon the defendant."). The evidence demonstrates that accommodating Plaintiff's disability with a wheelchair-accessible van would have been unsafe and, therefore, unreasonable. (ECF Nos. 103 at 11, 103-5 at 29-32; Chandler SUF, ¶30). Second, and with respect to the October 20, 2011 transport, the Court finds that Plaintiff chose to be transported by means of a non-handicapped-accessible bus, rather than wait for a handicapped-accessible vehicle. It was Plaintiff's choice, not Defendants' purported discriminatory intent that caused Plaintiff to be transported in a non-handicapped-accessible van on October 20, 2011. Based upon the foregoing, the Court finds that Plaintiff was not deprived of any benefit based upon his disability and, therefore, grants summary judgment on Count III in the Prison Defendants' favor.

### b.  Defendant Chandler

Chandler argues that Plaintiff's Rehabilitation Act claim against her fails because it is premised on medical treatment decision, which cannot form the basis of liability under the Act.

Chandler also claims that she cannot be held liable under the Rehabilitation Act in her official capacity due to lack of evidence that her employer, Corizon, receives federal funding.

In response, Plaintiff first notes that Chandler attested that she did not provide any medical treatment to Plaintiff. (ECF No. 109 at 15; ECF No. 105-3, ¶5). Plaintiff also presented evidence that he notified Chandler of his need for handicapped-accessible transportation prior to March 20, 2011, she had the authority or influence to affect the conditions of his transportation, and that she failed to secure him appropriate transportation in spite of her ability to do so. (ECF No. 109 at 15). In addition, Plaintiff notes that ERDCC receives federal funding and, therefore, Corizon (Chandler's employer) receiver receives federal funding through its contract with the Missouri Department of Corrections. (ECF No. 109 at 16).

The Court finds that there is no evidence that Defendant Chandler discriminated against Plaintiff. The Court has found that a wheelchair-accessible van was not required to accommodate Plaintiff's disability. In fact, the Court finds that a wheelchair-accessible van would not have been safe for Plaintiff, who appeared for transport in leg braces and not a wheelchair. In addition, once Plaintiff made Chandler aware of his alleged need for a handicapped-accessible van, Chandler sent Mull an email asking that Plaintiff be transported accordingly for all outcounts. The undisputed facts demonstrate that Chandler had no knowledge of Plaintiff's October 20, 2011 transport and was not involved in the decision to transport him on that date. (Chandler SUF, ¶38). Accordingly, the Court finds that Chandler did not discriminate against Plaintiff and grants defendant Chandler's Motion for Summary Judgment with respect to Count III.

### D. Count IV

Count IV of Plaintiff's Second Amended Complaint alleges that Thebeau retaliated against Plaintiff by searching his cell and destroying his property in violation of the Rehabilitation Act. The elements of a Rehabilitation Act retaliation claim include (1) plaintiff engaged in statutorily protected activity; (2) defendant took adverse action against plaintiff; and (3) causal connection exists between adverse action and protected activity. Amir v. St. Louis Univ., 184 F.3d 1017, 1025 (8th Cir. 1999)(elements of an ADA claim); Allison v. Dep't of Corr., 94 F.3d 494, 497 (8th Cir.1996) (cases interpreting ADA and Rehabilitation Act are effectively interchangeable).

Prison Defendants contend that no facts exist that demonstrate that there was a retaliatory intent behind the search of Plaintiff's cell. (ECF No. 103 at 21-22). Prison Defendants note that cell searches are part of daily life at ERDCC. Prison Defendants assert that it is insufficient to establish a causal connection based upon the fact that Plaintiff filed a complaint and that later his cell was searched. (Id.).

In response, Plaintiff contends that there is sufficient evidence of Thebeau's retaliatory intent. Plaintiff testified that he filed a formal complaint about Thebeau's failure to transport him in a handicapped-accessible van and, thereafter, Thebeau oversaw a search of Plaintiff's cell during which numerous items were destroyed and Thebeau made abusive comments to him about his complaint. (ECF No. 109 at 16-17). Moreover, Plaintiff asserts that the search was abnormal because more officers were present and no other cells were searched. (ECF No 109 at 17).

The Court finds Plaintiff has not demonstrated that there was a causal connection between the alleged adverse action and the protected activity. As previously discussed, Plaintiff has only demonstrated that Thebeau was present during an allegedly destructive search

and that it occurred after Plaintiff filed an IRR. Plaintiff has not provided any facts to demonstrate that Thebeau ordered the search or that such order was motivated by retaliation. See Kipp v. Missouri Highway & Transp. Comm'n., 280 F.3d 893, 897 (8th Cir. 2002)("evidence that gives rise to an inference of [a retaliatory] motive is not only sufficient to prove the required causal link but is also necessary"). Plaintiff has not shown that Thebeau was in a supervisory position or had any other authority over the other officers who allegedly conducted the search and destruction. In sum, the Court finds that there is an insufficient nexus between Plaintiff's filing of his IRR and the search of Plaintiff's cell to demonstrate a causal connection or that Thebeau instigated this search. Accordingly, the Court grants summary judgment to Defendant Thebeau on Count IV.

### E. Qualified Immunity

Finally, the Prison Defendants finally state that the §1983 claims against them are barred by qualified immunity because Plaintiff's claims of deliberate indifference, unsanitary conditions, verbal threats, and retaliation do not rise to the level of constitutional violations under the facts alleged. (ECF No. 103 at 23; ECF No. 116 at 12-13). "Government officials who perform discretionary functions are entitled to qualified immunity unless their alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in their positions would have known." Ottman v. City of Independence, Missouri, 341 F.3d 751, 756 (8th Cir. 2003). The Court has two steps to analyze whether a government official is entitled to qualified immunity. First, the Court determines whether the facts as asserted by the plaintiff show the government official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001). If the answer is no, the Court grants qualified immunity. If the answer is yes, the Court then analyzes "whether the right was clearly

established." Id. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear that the conduct was unlawful in the situation confronted. Id. at 202.

Based upon the record, the Court finds that Plaintiff's §1983 claims against the Prison Defendants are barred by qualified immunity. Plaintiff fails to identify how having him transported in a non-handicapped-accessible van or bus, when he arrived in leg braces, constituted a constitutional violation. Prison Defendants were not deliberately indifferent for following their official policy to protect the safety of the inmates. In addition, Plaintiff has failed to demonstrate Thebeau violated any of Plaintiff's constitutional rights related to the search of his prison cell. Accordingly, the Court finds that Plaintiff's allegations in Counts I and II as to the Prison Defendants are barred by qualified immunity.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [102] and Defendant Chandler's Motion for Summary Judgment [104] are **GRANTED**.

**IT IS FURTHER ORDERED** that the Joint Motion to Amend Pre-Trial Deadlines in Case Management Order [121] is **DENIED** as moot.

Dated this 5th day of February, 2014.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**